IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION

| | | |
|---|---|---|
| ARACELI D., | ) | |
| | ) | |
| Plaintiff, | ) | |
| | ) | |
| v. | ) | No. 19 C 3487 |
| | ) | |
| ANDREW M. SAUL, | ) | Magistrate Judge Finnegan |
| Commissioner of Social Security, | ) | |
| | ) | |
| Defendant. | ) | |

## ORDER

Plaintiff Araceli D. seeks to overturn the final decision of the Commissioner of Social Security ("Commissioner") denying in part her application for Disability Insurance Benefits ("DIB") under Title II of the Social Security Act. The parties consented to the jurisdiction of the United States Magistrate Judge pursuant to 28 U.S.C. § 636(c), and Plaintiff filed a brief explaining why the Commissioner's decision should be reversed or the case remanded. The Commissioner responded with a competing motion for summary judgment in support of affirming the decision. After careful review of the record and the parties' respective arguments, the Court now grants the Commissioner's motion.

## BACKGROUND

Plaintiff applied for DIB on March 17, 2015, alleging disability since February 15, 2012 due to trigeminal neuralgia,[1] sharp constant pain, migraine headaches, surgery in both knees, vertigo, and dizziness. (R. 237, 260). Born in January 1961, Plaintiff was 51 years old as of the alleged disability onset date. (R. 237). She completed the 9th grade

---

[1] Trigeminal neuralgia is "a chronic pain condition that affects the trigeminal nerve, which carries sensation from [the] face to [the] brain." (https://www.mayoclinic.org/diseases-conditions/trigeminal-neuralgia/symptoms-causes/syc-20353344, last visited February 4, 2021).

and spent approximately 22 years working as a packer, followed by nearly 11 years as a clerk. (R. 115, 261). She quit her most recent job doing data entry and filing on February 15, 2012 due to her conditions and has not worked since that date. (*Id.*).

The Social Security Administration denied Plaintiff's application initially on October 23, 2015, and again upon reconsideration on January 27, 2016. (R. 121-41). Plaintiff filed a timely request for a hearing and appeared before administrative law judge Jennifer Smiley (the "ALJ") on June 7, 2017. (R. 106). The ALJ heard testimony from Plaintiff, who was accompanied by a non-attorney representative, and from vocational expert Mary Andrews (the "VE"). (R. 107-20). On October 26, 2017, the ALJ found that Plaintiff's migraine headaches have been a severe impairment since the February 15, 2012 alleged disability onset date, and beginning November 1, 2013, Plaintiff's trigeminal neuralgia also became a severe impairment. (R. 74). At no time, however, have the impairments met or equaled any of the listed impairments in 20 C.F.R. Part 404, Subpart P, Appendix 1. (R. 74-75, 78-79). After reviewing the medical and testimonial evidence in detail, the ALJ concluded that Plaintiff was not disabled from February 15, 2012 to November 1, 2013 because she retained the residual functional capacity ("RFC") to perform light work involving: no climbing of ladders or scaffolds; no exposure to more than moderate noise as defined in the Dictionary of Occupational Titles; and no exposure to extreme cold, extreme heat, or workplace hazards, including unprotected heights, moving mechanical parts, and operating motor vehicles. (R. 75-76). The VE testified that this RFC allowed Plaintiff to perform her past relevant work as a general clerk and hardware assembler. (R. 80, 117-18).

From November 1, 2013 through April 15, 2015, Plaintiff still had the same capacity for light work but the pain from trigeminal neuralgia would render her off-task for more than 15% of the workday. With this added restriction, the VE testified that Plaintiff could not perform her past work and there were no other jobs available to her in the national economy. (R. 118-19). For this reason, the ALJ concluded that Plaintiff was disabled during that period. (R. 76-78). Beginning April 16, 2015, Plaintiff experienced medical improvement allowing her to perform the same range of light work with no further concerns about off-task time. (R. 79-80). The ALJ accepted the VE's testimony that a person with Plaintiff's background and RFC could once again perform her past relevant work as a general clerk and a hardware assembler, and so found her no longer disabled. (R. 80-81, 117-18).

Plaintiff asked the Appeals Council to review the portion of the ALJ's decision denying her benefits as of April 16, 2015, and submitted the following new evidence for consideration: medical records from Plaintiff's primary care physician Victor Munoz, M.D., dated September 20 to December 5, 2017; and a February 14, 2018 letter from Plaintiff's neurosurgeon Kenji Muro, M.D. (R. 42, 87-96).[2] On April 18, 2018, the Appeals Council denied the request for review, finding no error in the ALJ's analysis and concluding that the new evidence had no reasonable probability of changing the outcome of the decision and/or did not relate to the period at issue. (R. 41-44). The ALJ's decision is thus the final decision of the Commissioner and reviewable by this Court under 42 U.S.C. § 405(g). *See Haynes v. Barnhart*, 416 F.3d 621, 626 (7th Cir. 2005).

---

[2] The new records from Dr. Munoz actually cover June 6, 2017 to December 5, 2017, but Plaintiff does not discuss the records dated prior to September 2017. (R. 87-105).

3

In support of her request for reversal or remand, Plaintiff argues that: (1) the ALJ erred in discounting her statements regarding the limiting effects of her impairments after April 15, 2015; and (2) the Appeals Council improperly concluded that the new evidence she submitted was not relevant or material. For reasons discussed in this opinion, the Court finds that the ALJ's decision is supported by substantial evidence, and the Appeals Council did not commit any legal error warranting reversal.

## DISCUSSION

### A.  Standard of Review

Judicial review of the Commissioner's final decision is authorized by 42 U.S.C. § 405(g) of the Social Security Act (the "SSA"). In reviewing this decision, the court may not engage in its own analysis of whether Plaintiff is severely impaired as defined by the Social Security regulations. *Young v. Barnhart*, 362 F.3d 995, 1001 (7th Cir. 2004). Nor may it "'displace the ALJ's judgment by reconsidering facts or evidence or making credibility determinations.'" *Castile v. Astrue*, 617 F.3d 923, 926 (7th Cir. 2010) (quoting *Skinner v. Astrue*, 478 F.3d 836, 841 (7th Cir. 2007)). The court "will reverse an ALJ's determination only when it is not supported by substantial evidence, meaning 'such relevant evidence as a reasonable mind might accept as adequate to support a conclusion.'" *Pepper v. Colvin*, 712 F.3d 351, 361-62 (7th Cir. 2013) (quoting *McKinzey v. Astrue*, 641 F.3d 884, 889 (7th Cir. 2011)).

In making its determination, the court must "look to whether the ALJ built an 'accurate and logical bridge' from the evidence to [his] conclusion that the claimant is not disabled." *Simila v. Astrue*, 573 F.3d 503, 513 (7th Cir. 2009) (quoting *Craft v. Astrue*, 539 F.3d 668, 673 (7th Cir. 2008)). The ALJ need not, however, "'provide a complete

4

written evaluation of every piece of testimony and evidence.'" *Pepper*, 712 F.3d at 362 (quoting *Schmidt v. Barnhart*, 395 F.3d 737, 744 (7th Cir. 2005) (internal citations and quotation marks omitted)). Where the Commissioner's decision "'lacks evidentiary support or is so poorly articulated as to prevent meaningful review,' a remand is required." *Hopgood ex rel. L.G. v. Astrue*, 578 F.3d 696, 698 (7th Cir. 2009) (quoting *Steele v. Barnhart*, 290 F.3d 936, 940 (7th Cir. 2002)).

**B.      Five-Step Inquiry**

To recover disability benefits under the SSA, a claimant must establish that she is disabled within the meaning of the SSA. *Snedden v. Colvin*, No. 14 C 9038, 2016 WL 792301, at *6 (N.D. Ill. Feb. 29, 2016). A claimant is disabled if she is unable to perform "any substantial gainful activity by reason of any medically determinable physical or mental impairment which can be expected to result in death or which has lasted or can be expected to law for a continuous period of not less than 12 months." 20 C.F.R. § 404.1505(a). In determining whether a claimant suffers from a disability, an ALJ must conduct a standard five-step inquiry, which involves analyzing: "(1) whether the claimant is currently employed; (2) whether the claimant has a severe impairment; (3) whether the claimant's impairment is one that the Commissioner considers conclusively disabling; (4) if the claimant does not have a conclusively disabling impairment, whether [s]he can perform her past relevant work; and (5) whether the claimant is capable of performing any work in the national economy." *Kastner v. Astrue*, 697 F.3d 642, 646 (7th Cir. 2012) (citing 20 C.F.R. § 404.1520). If the claimant meets her burden of proof at steps one through four, the burden shifts to the Commissioner at step five. *Moore v. Astrue*, 851 F. Supp. 2d 1131, 1139-40 (N.D. Ill. 2012).

5

### C. Analysis

#### 1. Plaintiff's Testimony

Plaintiff argues that the case must be reversed or remanded because the ALJ failed to properly weigh her statements regarding the limiting effects of her pain. The regulations describe a two-step process for evaluating a claimant's own description of her symptoms. First, the ALJ "must consider whether there is an underlying medically determinable physical or mental impairment(s) that could reasonably be expected to produce the individual's symptoms, such as pain." SSR 16-3p, at *2. If there is such an impairment, the ALJ must "evaluate the intensity and persistence of those symptoms to determine the extent to which the symptoms limit an individual's ability to perform work-related activities." *Id*. In evaluating a claimant's symptoms, "an ALJ must consider several factors, including the claimant's daily activities, her level of pain or symptoms, aggravating factors, medication, treatment, and limitations, . . . and justify the finding with specific reasons." *Villano v. Astrue*, 556 F.3d 558, 562 (7th Cir. 2009). An ALJ's assessment of a claimant's subjective complaints will be reversed only if "patently wrong." *Jones v. Astrue*, 623 F.3d 1155, 1162 (7th Cir. 2010).

In an April 21, 2015 Function Report, Plaintiff stated that she suffers from sharp, constant pain in the eye, ear, and side of her face as a result of trigeminal neuralgia, and prescription pain medication such as Norco does not help. (R. 288). The pain interrupts her sleep and essentially "control[s]" her life. (R. 289, 290). On January 27, 2016, Plaintiff submitted a second Function Report reiterating that she is in constant, severe pain that keeps her in bed all day. (R. 313-14). At the June 7, 2017 hearing before the ALJ, Plaintiff

6

testified that she had surgery in February 2015 to alleviate her facial pain and pressure but it did not help and her pain is "the same as before." (R. 115). Many things trigger the pain or make it worse, including stress, illness, migraines, the weather, and brushing her teeth. (R. 116). Plaintiff stated that there are "[v]ery few" moments when she does not feel pain, but she is reluctant to take medication because she knows it will not be effective. (R. 115-16).

As noted, the ALJ agreed that Plaintiff was disabled from November 1, 2013 through April 15, 2015 because the pain she described from trigeminal neuralgia would keep her off-task for more than 15% of the workday. (R. 76-78). Plaintiff's right face pain began in November 2013 following a tooth extraction and implant. (R. 77, 522-23). Between September 12, 2014 and January 30, 2015, she worked with her primary care physician Dr. Victor Munoz, two neurologists, a pain specialist, and a dentist in an effort to alleviate her symptoms. (R. 77, 343-45, 347-40, 392, 437-40, 470, 512, 522-23). Plaintiff tried a variety of pain medications, including Vicodin, Cymbalta, oxcarbazepine, carbamazepine, amitriptyline, reclofen, duloxetine, gabapentin, indomethacin, and baclofen, but they were either ineffective or caused intolerable side effects such as nausea, drowsiness, headaches, and unsteadiness. (R. 77, 345, 347, 437, 470, 511). Tooth extractions and a trigeminal nerve block also proved unsuccessful in relieving Plaintiff's pain. (R. 77, 458, 512, 522).

On February 5, 2015, Plaintiff had a consultation with neurosurgeon Dr. Kenji Muro. At that time Plaintiff complained of pain most of each day with multiple triggers, including eating, touching, brushing her teeth, etc. (R. 77, 369). Dr. Muro determined that Plaintiff was a good candidate for a right suboccipital craniectomy and microvascular

7

decompression ("MVD") of the trigeminal nerve, and he performed the procedure on February 17, 2015. (R. 77, 369, 372). At the time of Plaintiff's discharge from the hospital on February 20, 2015, she reported that her facial pains were gone. (R. 77, 368). At an appointment with Dr. Munoz on March 27, 2015, Plaintiff confirmed that the face pain had "significantly improved" and she "feels well with no complaints." (R. 77, 448). Based on this evidence and Plaintiff's consistent complaints of pain from November 1, 2013 through April 15, 2015, the ALJ accepted that Plaintiff's pain would cause her to be off-task more than 15% of the workday, rendering her incapable of working. Plaintiff does not challenge any aspect of the ALJ's decision to award her benefits during this period.

The ALJ determined that after April 15, 2015, Plaintiff's pain improved to the point where she would no longer be off-task during the workday. (R. 78-80). In rejecting Plaintiff's contrary testimony that her severe pain persisted, the ALJ first explained that it was "simply unsupported by the record." (R. 80). When Plaintiff saw Dr. Muro for a follow-up appointment on April 15, 2015, she said her "[f]ace feels great!" and she had only experienced a couple of brief pain episodes. (R. 79, 580). Dr. Muro noted that Plaintiff still had some occasional slight nerve irritation but otherwise described her as "doing well." (R. 79, 581). The same day, Dr. Muro sent a letter to Dr. Munoz reporting that "other than a couple of very brief pain attacks," Plaintiff was "pain-free." (R. 79, 500). On May 14, 2015, Plaintiff told her gynecologist that she had "[n]o complaints" and was "[f]eeling better" since her face surgery. (R. 630). Plaintiff continued to do well on June 10, 2015, informing Dr. Muro that her "[f]ace feels great – no more 'severe pain' she had preop." (R. 79, 589). Plaintiff said she did get a right-sided ache from her ear to the corner of her mouth when she was stressed or working hard, or after working out for 15

8

minutes. She also described some head pressure around loud noises such as a vacuum or lawn mower. Otherwise, she was "feeling well." (R. 79, 589). Dr. Muro assessed Plaintiff as "doing well," started her on Tegretol for the residual pain, and indicated that she may need some workplace modifications given her sensitivity to noise. (R. 79, 591).

When Plaintiff saw Dr. Munoz on August 12, 2015, she had no complaints and her exam was largely normal. (R. 614-15). A couple months later, on October 7, 2015, Plaintiff told Dr. Muro she was still "doing well" and had experienced only one episode of pain per week with the colder weather. (R. 79, 637). Plaintiff was unable to tolerate the Tegretol due to nausea so when a pain episode occurred, she took Valium, which helped her relax. (R. 79, 640). Overall, Plaintiff was "very happy." (R. 79, 638, 640). Plaintiff returned to Dr. Munoz on November 16, 2015 to discuss some lab results. She reported no complaints and her exam was largely normal. Dr. Munoz indicated that Plaintiff's trigeminal neuralgia was stable on medication (carbamazepine). (R. 80, 598-99). Plaintiff did not mention face pain or headaches during an appointment with Dr. Munoz on February 16, 2016, and she said she was feeling well on March 21, 2016 with "no current symptoms." (R. 80, 737, 738, 742).

The record does not contain any further treatment notes from Dr. Munoz or Dr. Muro for more than a year, until June 2017. These new documents, which Plaintiff first submitted to the Appeals Council, were not available to the ALJ but several provide further support for the ALJ's decision that Plaintiff's statements regarding the disabling effects of her pain after April 15, 2015 were not consistent with the medical record. For example, Plaintiff saw Dr. Munoz on June 6, 2017 due to trigger finger pain in her right thumb, but said nothing about face or headache pain. (R. 104-05). She likewise had no complaints

9

and was doing well at an appointment with Dr. Munoz on August 1, 2017. (R. 99). And on September 6, 2017, Plaintiff told her gynecologist that she "feels well with no complaints," "exercises 3-4 times per week," and "sleeps 7 hours per night." (R. 97). *See Thorps v. Astrue*, 873 F. Supp. 2d 995, 1006 (N.D. Ill. 2012) (citing *Arnold v. Barnhart*, 473 F.3d 816, 823 (7th Cir. 2007) ("[A] patient's subjective complaints are not required to be accepted insofar as they clashed with other, objective medical evidence in the record.").

At the hearing, Plaintiff testified that she told her doctors she was pain free because she was on medications at the time and "wasn't fully aware." (R. 115). At some point, however, she stopped taking the medications due to allergies/side effects. (*Id.*). The ALJ did not credit this testimony because after Plaintiff's February 2015 surgery, she was able to take Valium with no reported side effects, and it helped her relax. (R. 80). Plaintiff also claimed that she spends most of her days in bed due to pain (R. 114), but the ALJ cited contrary records showing that Plaintiff was working out in June 2015, and that she reported feeling well with no complaints of face or headache pain in February and March 2016. (R. 80, 589, 737-38, 742). As noted, even as late as September 2017, Plaintiff was reporting working out 3-4 times per week. (R. 97).

Plaintiff does not address any of this evidence or explain how the cited medical records support her claims of disabling pain after April 15, 2015. Instead, Plaintiff takes issue with the ALJ's additional observation that she had no ongoing treatment following her successful face surgery. (R. 80). Though a history of sporadic treatment can undermine a claimant's credibility, Plaintiff stresses that an ALJ must consider the claimant's reasons for the lack of care before drawing a negative inference. (Doc. 13, at

10

6-7) (citing SSR 16-3p, 2016 WL 1119029, at *9-10). *See also Shauger v. Astrue*, 675 F.3d 690, 696 (7th Cir. 2012). Plaintiff objects that the ALJ failed to inquire about her minimal treatment and identifies some "possible reasons" for her limited care. (Doc. 13, at 7; Doc. 25, at 1-2). For instance, in her April 21, 2015 Function Report, Plaintiff claimed she was unable to drive, could not go out alone, and needed reminders to attend doctors' appointments. (R. 272-73). In her January 27, 2016 Function Report, Plaintiff reiterated that she needs reminders to attend doctors' appointments, cannot go out alone because she is unstable when she walks, and cannot drive because her vision is affected by pain. (R. 316-17).

To begin, Plaintiff never raised any of the stated concerns with her medical providers. Moreover, even accepting that Plaintiff stopped receiving medical treatment for her face pain for more than a year due to problems getting to her appointments, this would not explain why Plaintiff failed to complain about disabling face pain or headaches while she was receiving medical care from April 2015 through March 2016 (R. 79-80), or when she resumed treatment with Dr. Munoz in June 2017. Plaintiff speculates that she "may have believed her pain was untreatable because she had seen at least five doctors without complete relief, had undergone multiple invasive procedures to unsuccessfully treat her pain, and was unable to tolerate pain medications." (Doc. 13, at 7). In making this argument, however, Plaintiff largely relies on records from November 2013 to April 15, 2015, the period when the ALJ found her disabled. (*Id.*) (citing R. 343-50, 389-431, 437-40, 470-72, 504, 511-12, 580-81). There is no evidence to suggest that Plaintiff asked about additional treatment options for her ongoing pain from April 15, 2015 to at least September 2017, much less that she was told that none existed. To the contrary,

11

the medical records uniformly show that the February 2015 surgery successfully resolved Plaintiff's pain. *See Murphy v. Berryhill*, 727 F. App'x 202, 207 (7th Cir. 2018) (ALJ's adverse credibility finding was "properly based on the incongruity between the relatively modest symptoms Murphy reported to her doctors and the more severe symptoms Murphy . . . reported to the ALJ.").

Plaintiff insists that notwithstanding the cited medical records, the ALJ ignored other evidence that supports her claim of continued pain: her treatment with a therapist for 3 months due to anxiety about pain. (Doc. 13, at 8). Plaintiff saw Gisela Gomez, LCSW, 9 times between April 18, 2016 and July 21, 2016 to "learn how to manage her anxiety about a possible episode of severe pain." (R. 724). During that period, Plaintiff discussed: her difficulties managing pain; the ways pain affects her daily life; anxiety about not knowing when the next pain attack will occur; difficulty accepting her diagnosis; and difficulty managing her mood due to a severe episode of pain. (R. 712, 714, 716, 718, 720, 722, 724, 726, 728).

The ALJ acknowledged the therapy records but only in the context of assessing whether Plaintiff had a severe mental impairment at Step Two of the sequential analysis. (R. 74-75). The Court agrees that the ALJ also should have explained whether and to what extent the therapist's notes impacted her assessment of Plaintiff's claims of disabling pain after April 15, 2015. That said, any error the ALJ made in that regard was harmless given the other compelling reasons the ALJ gave for discounting Plaintiff's subjective statements, most notably her repeated representations to her treating physicians that she felt good and had no complaints of pain. *See Spiva v. Astrue*, 628 F.3d 346, 353 (7th Cir. 2010) (reaffirming that harmless error applies to social security

cases); *Mueller v. Colvin*, 524 F. App'x 282, 285 (7th Cir. 2013) (error in making credibility determination may be harmless "if the agency's decision is overwhelmingly supported by the record and thus remand would be pointless.").

An ALJ's credibility assessment "need not be perfect; it just can't be patently wrong." *Dawson v. Colvin*, No. 11 C 6671, 2014 WL 1392974, at *10 (N.D. Ill. Apr. 10, 2014) (citing *Schreiber v. Colvin*, 519 F. App'x 951, 961 (7th Cir. 2013)). And "[a]s the Supreme Court observed fairly recently, substantial evidence is not a high standard, and requires only evidence that 'a reasonable mind might accept as adequate.'" *Richard C. v. Saul*, No. 19 C 50013, 2020 WL 1139244, at *5 (N.D. Ill. Mar. 9, 2020) (quoting *Biestek v. Berryhill*, 139 S. Ct. 1148, 1154 (2019)). Viewing the record as a whole, the ALJ provided several valid reasons for discounting Plaintiff's complaints of disabling pain, and that decision is supported by substantial evidence.

**B.     Appeals Council Decision**

Plaintiff argues that the case must still be remanded because the Appeals Council erred in deciding that the new evidence she submitted was not material. Under the Social Security regulations, the Appeals Council will only consider additional evidence if it is "new, material, and relates to the period on or before the date of the hearing decision, and there is a reasonable probability that the additional evidence would change the outcome of the decision." 20 C.F.R. § 404.970(a)(5). Evidence is "new" if it was "not in existence or available to the claimant at the time of the administrative proceeding." *Stepp v. Colvin*, 795 F.3d 711, 725 (7th Cir. 2015). Evidence is "material" if it "creates a reasonable probability that the Commissioner would have reached a different conclusion had the evidence been considered." *Id.* (quotations omitted).

13

In appealing the ALJ's decision to the Appeals Council, Plaintiff submitted (1) medical records from her primary care physician Dr. Munoz dated September 20 to December 5, 2017; and (2) a February 14, 2018 letter from her neurosurgeon Dr Muro. (R. 42, 87-105). There is no dispute that these records are "new" since they all post-date the June 7, 2017 administrative hearing. The only question is whether they are also "material." Looking first to the treatment notes from Dr. Munoz, the Appeals Council found the records were not material because they did not show "a reasonable probability that [they] would change the outcome of the decision." (R. 42). Plaintiff argues this was error because the records demonstrate that she continued to make complaints about face pain after April 15, 2015, disproving the ALJ's contrary finding. (Doc. 13, at 9). This Court disagrees.

As discussed earlier, Plaintiff did not complain about face pain to Dr. Munoz, Dr. Muro, or any other physician from April 16, 2015 through March 21, 2016. She then had three months of therapy from April through July 2016, but she never saw any medical doctors during that period. And when Plaintiff resumed treatment with Dr. Munoz on June 6, 2017, it was solely for right hand pain with no mention of face pain or trigeminal neuralgia. (R. 104-05).[3] On August 1, 2017, Plaintiff once again had no complaints and was doing well. (R. 99). The same was true on September 6, 2017, when Plaintiff reported feeling well, exercising 3-4 times per week, and sleeping 7 hours per night. (R. 97). The Court recognizes that beginning on September 20, 2017, Plaintiff once again started complaining to Dr. Munoz about recently worsening, intermittent pain that was not controlled with medication. (R. 87, 92-94) ("recent pain episode was worse."). But the

---

[3] Plaintiff saw Dr. Munoz's colleague, David Garelick, M.D., on June 6, June 19, and July 10, 2017, but only to address a diagnosis of trigger finger of the right thumb. (R. 101-03).

14

last report before the ALJ's October 26, 2017 decision was somewhat mixed: on October 20, 2017, Plaintiff told Dr. Munoz that despite continued face pain and a planned second surgery, she "feels well with no complaints, has good energy level and is sleeping well." (R. 90, 92).

Given that Plaintiff routinely denied to her medical doctors that she was having face pain for more than two years from April 16, 2015 to September 20, 2017, the Appeals Council did not err in concluding that there was not a reasonable probability that the ALJ would have reached a different conclusion had she considered Dr. Munoz's new treatment notes. To the extent Plaintiff's condition worsened in late 2017, her recourse is to file a new application for benefits, not seek to revisit the current application. *Getch v. Astrue*, 539 F.3d 473, 484 (7th Cir. 2008) ("If Mr. Getch has developed additional impairments, or his impairments have worsened, since his first application for benefits, he may submit a new application.").

With respect to Dr. Muro's February 14, 2018 letter, the Appeals Council determined it was not material because it did not relate to the period at issue. (R. 42). The letter informed Dr. Munoz that Dr. Muro had seen Plaintiff (presumably on or about February 14, 2018), and she presented with "debilitating right side face pain/trigeminal neuralgia." (R. 59). Since Plaintiff remained symptomatic despite medication, the MVD procedure, and a balloon mechanocompression, Dr. Muro recommended that she undergo stereotactic radiosurgery.[4] (*Id.*). Plaintiff argues that even though this letter post-dates the ALJ's October 26, 2017 decision, it relates back to the relevant period because Dr. Muro saw Plaintiff "at least three times during the relevant period and his

---

[4] The record does not contain any medical notes relating to the balloon mechanocompression, but it appears it took place on October 31, 2017. (R. 92, 236).

letter shows that, contrary to the ALJ's reasoning, her treatment during the relevant period was not successful." (Doc. 13, at 10).

The flaw in this argument is that there is no evidence in the record that Dr. Muro saw Plaintiff from October 7, 2015 to the date he wrote the February 14, 2018 letter. Even accepting that Dr. Muro started treating Plaintiff again sometime in October 2017, the letter says nothing about her functioning during a more than 2 year period before that date. The fact that Plaintiff remained symptomatic in February 2018 does not show she was also symptomatic from April 16, 2015 to October 2017, particularly absent complaints in that regard to Plaintiff's treating physicians.

On the record presented, the Appeals Council did not err in concluding that the new evidence Plaintiff submitted would not have changed the ALJ's decision and/or was unrelated to the relevant period. Plaintiff's request for a remand to further address that new evidence is denied.

## **CONCLUSION**

For the reasons stated above, Plaintiff's request to reverse or remand the ALJ's decision is denied, and the Commissioner's motion for summary judgment [23] is granted. The Clerk is directed to enter judgment in favor of the Commissioner.

ENTER:

Dated: February 4, 2021

_____
SHEILA FINNEGAN
United States Magistrate Judge

16